UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AVERY SIMMONS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SAFEWAY, INC., d/b/a HAGGEN FOOD AND PHARMACY, a Delaware corporation,<br><br>Defendant. | CASE NO. 18-5522 RJB<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant Safeway, Inc., d/b/a Haggen Food and Pharmacy's ("Haggen" or "Defendant") Motion for Summary Judgment. Dkt. 49. The Court has considered the pleadings filed regarding the motion and the remaining file.

On May 14, 2018, Plaintiff Avery Simmons filed this employment discrimination case in Thurston County, Washington, Superior Court, in connection with her employment in the deli at Haggen's Olympia, Washington store. Dkt. 1-2. Haggen moves for summary judgment on all claims. Dkt. 49. For the reasons provided below, Haggen's motion (Dkt. 49) should be granted.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

### A. BACKGROUND FACTS

Haggen hired the Plaintiff as a deli worker on February 16, 2017. Dkt. 12, at 2. The Plaintiff received employee orientation and a handbook, which contained Haggen's policies regarding

harassment, discrimination, retaliation, mandatory immediate worker injury reporting, and attendance requirements (which provided that during a six month period excessive absenteeism – four or more instances – will be subject to corrective action). Dkt. 50-1, at 6-10. The Plaintiff was also a member of a union, and was aware she could, but did not, file complaints with her union. *Id.,* at 10-11.

On August 24, 2017, the Plaintiff splashed water in her eye while cleaning up after 9:00 p.m. Dkt. 50-1, at 13. The following day, the eye appeared swollen, and the Plaintiff was concerned she had an infection. *Id.,* at 14. She reported the incident to Haggen on August 26, 2017. Dkt. 50-1, at 15-17. The Plaintiff filled out a formal incident form on August 27, 2017. *Id.* On September 3, 2017, she received a write-up by Lillian Hett, a supervisor, indicating that her injury resulted from careless work habits. *Id.*, at 19. Plaintiff also filed a Self-Insurer Accident Report form and a worker's compensation claim on September 3, 2017. Dkt. 50-1, at 77. She received a Personnel Action Notice, dated September 4, 2017, for failing to report the injury right away. Dkt. 50-1, at 84. The Personnel Action Notice is a form, which includes a small type-written portion which reads, "additional or continued violations will subject you to further corrective action up to and including discharge." Dkt. 50-1, at 84.

Around the end of August 2017, Andy Shaffer began working in the deli with the Plaintiff. Dkt. 50-1, at 21. The Plaintiff felt uncomfortable around Mr. Shaffer – she asserts that he stared at her and would stand one to two feet away (too close for her comfort). Dkt. 50-1, at 22. Although she never told anyone at Haggen, the Plaintiff felt the way he stared was like he "was undressing [her] with his eyes." Dkt. 59-4, at 41.

On October 3, 3017, the Plaintiff accepted a job with Hobby Lobby. Dkt. 61-1, at 4.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 2

On October 16, 2017, around 9:00 a.m. or 10:00 a.m., the Plaintiff reported to Haggen managers Connie West and Lillian Hett that Mr. Shaffer was staring at her, following her around (into the dish room and cooler), and that he made her feel uncomfortable and unsafe. Dkt. 50-1, at 29-30. According to the Plaintiff, Ms. West said "That's just how he is, he stares at me too." Dkt. 50-1, at 30. The Plaintiff asserts that Ms. Hett said, "We'll watch him." Dkt. 50-1, at 30-31. The Plaintiff wanted them to talk with Mr. Shaffer immediately about it. Dkt. 50-1, at 31.

Around lunch time on October 16, the Plaintiff asserts that Mr. Shaffer took his meal break at the same time she did even though meal breaks were supposed to be staggered so that only one deli employee was on break at a time. Dkt. 58, at 2.

That same day, October 16, around 1:30 p.m., the Plaintiff maintains that she was standing in a small hallway looking at the schedule with another employee, CJ (the employee's full name is not in the record). Dkt. 50-1, 24. The schedule and temperature log, which the employees used to keep track of the temperatures of various deli products to ensure they comply with health codes, was kept next to the schedule. Dkt. 50-1, at 24. According to the Plaintiff, Mr. Shaffer "takes his hand and forearm and cups his hand and touches [her] lower back, and wraps it around [her] waist, and then reaches for the [temperature] log" for 30 seconds. Dkt. 50-1, at 24-25. She does not know if CJ, the other employee who was present, saw it. *Id.* The Plaintiff maintains that Mr. Shaffer did not need the temperature log for another 30 minutes. *Id.* She asserts that she ran away crying to the dish room. Dkt. 58, at 2. The Plaintiff did not report to anyone at Haggen that Mr. Shaffer touched her until October 23, 2017. Dkt. 59-4, at 28.

After learning that Mr. Shaffer was making the Plaintiff uncomfortable with his staring, Ms. Hett counseled Mr. Shaffer that day (October 16) about how he looked at people in the store; specifically, that he made co-workers uncomfortable when he stared at them. Dkts. 53, at 2 and

54 at 2. Mr. Shaffer maintains that no one told him they felt uncomfortable, that he felt badly, and was only trying to learn his job by watching others. Dkt. 53, at 2. He denies touching the Plaintiff. *Id.*

Four days later, on the morning of October 20, 2017, the Plaintiff received two Personnel Action Notices, or "documented verbal warnings" given to her by Jennifer Barker, another manager. Dkts. 50-1, at 37 and 52, at 2. One was for her failure to turn on the soup pots on October 7 and October 15; it was signed by Ms. Barker and Ms. Hett. *Id.* The Plaintiff thought she turned the pots on. Dkt. 50-1, at 37. However, she was the only employee that turned the pots on (Dkt. 50-1, at 38) and she acknowledges that the daily temperature logs indicated that she failed to do it on those days (Dkt. 50-1, at 48). The second Personnel Action Notice or "documented verbal warning" was for excessive absenteeism. Dkt. 52, at 2. The Plaintiff acknowledges that she was absent from work on July 30, August 12, August 26 (for her eye injury), September 25, and October 8. Dkt. 50-1, at 38-39 and 49. Ms. Barker states that she alone decided to issue the Personnel Action Notices and had no knowledge of the Plaintiff's complaint regarding Mr. Shaffer. Dkt. 52, at 3.

On Friday, October 20, 2017 Elizabeth Parkes, in-house counsel for Haggen, was ill, but was at work. Dkt. 50-2, at 4. The Plaintiff called and told the Ms. Parkes's assistant (the person who answered the phone) that she needed to talk to someone about "sexual harassment." Dkt. 59-4, at 35. Ms. Parkes was on the phone when her assistant brought her a note card about the phone call from the Plaintiff about being sexually harassed. Dkt. 50-2, at 4-5. Ms. Parkes states that she called the store, spoke to Ms. Hett, and began her investigation into the Plaintiff's allegations on October 20, 2017. Dkt. 50-2, at 5. After making some notes about the conversation, she then

went home early because she was sick. Dkt. 50-2, at 6. Ms. Parkes was aware that the Plaintiff and Mr. Shaffer were not scheduled to work together again until October 24, 2017. Dkt. 51, at 3.

After her conversation with Ms. Parkes, Ms. Hett again coached Mr. Shaffer about his staring and Haggen's policies, even though he had not worked with the Plaintiff since her October 16th complaint. Dkt. 54, at 2.

On Monday, October 23, 2017, at the beginning of her shift, the Plaintiff states that she talked with Ms. Barker, a manager, about Mr. Shaffer. Dkt. 50-1 at 32. The Plaintiff maintains that she reported to Ms. Barker that Mr. Shaffer had touched her, was staring at her, and she "did not feel safe to close with him at night." Dkt. 50-1, at 32. The Plaintiff did not tell Ms. Barker that she was not going to come to work the next day – October 24, 2017. Dkt. 50-1, at 50-51.

The Plaintiff asserts that, at that point, no one followed up with her about her complaint regarding Mr. Shaffer. Dkt. 50-1, at 32.

On October 23, 2017, the Plaintiff states she again contacted Haggen's legal team. Dkt. 50-1, at 32. She maintains that she was asked to call back later because Ms. Parkes, who was investigating her complaints, was out sick. Dkt. 50-1, at 40. The Plaintiff told the assistant who answered the phone, that in addition to the staring, Mr. Shaffer touched her waist. Dkt. 59-7.

Even though she was at home sick, Ms. Parkes states that she tried calling the Plaintiff twice on October 23, 2017. Dkt. 50-2, at 8. She left a message after an automated greeting. *Id.* Ms. Parkes had the wrong number; she dialed a phone number one digit off the Plaintiff's number. Dkt. 51, at 3.

That same day, on October 23, 2017, Ms. Parkes called Ms. Hett and emailed the store. Dkt. 50-2, at 13. Ms. Parkes told Ms. Hett to counsel Mr. Shaffer and to "get a detailed written statement" from the Plaintiff. *Id.* and Dkt. 51, at 4. The email, dated October 23, 2017, marked

ORDER ON MOTION FOR SUMMARY JUDGMENT - 5

"high importance," and sent to the store manager Darren Mayes and Lillian Hett, provides that Ms. Parkes tried calling the Plaintiff. Dkt. 50-2, at 15 and 32. It further provides that "[i]f she doesn't call me back someone will need to get a detailed written statement from her when she clocks on tomorrow." *Id.*

The Plaintiff was scheduled to work with Mr. Schaffer on October 24, 2017. Dkt. 50-1, at 41. She did not go to work on October 24th. Dkt. 50-1, at 41. She states that she communicated to Haggen that she was not working by "not show[ing] up." Dkt. 50-1, at 50-51. She did not call them either. Dkt. 50-1, at 51. She states that she had a panic attack that day and went to the hospital for suicidal thoughts. Dkt. 58, at 3.

On October 25, 2017, the Plaintiff came into the deli and told manager Ms. West that she "quit." Dkt. 50-1, at 52. According to the Plaintiff, Ms. West responded with "it wasn't even that bad, I thought you were tougher than that, he didn't even show up last night." Dkt. 50-1, at 52. The Plaintiff states that she "quit, so [she didn't] think [she] was discharged constructively." Dkt. 50-1, at 54.

On November 7, 2017, the Plaintiff spoke with an in-house attorney for Haggen, Ms. Parkes. Dkt. 50-2, at 27. Ms. Parkes told the Plaintiff about the counseling that Mr. Shaffer received regarding her complaints. Dkt. 50-2, at 28.

On November 7, 2017, Mr. Schaffer was again counseled by Ms. Barker and Mr. Mayes. Dkts. 50-2, at 39 and 53, at 2.

The Plaintiff filed an Equal Employment Opportunity Commission charge on April 13, 2018, which provided, in part:

> I was constructively discharged on or about October 24, 2017. On or around October 16, 2017, I was sexually harassed by co-worker, Andrew LNU, in the form of unwanted touching and sexual gestures. I reported the harassment to management, but no action was taken. Lastly, due to all of the harassment I was

ORDER ON MOTION FOR SUMMARY JUDGMENT - 6

subjected to by Andrew, I felt that I had no other choice, but to resign my employment. I believe that I have been subjected to sexual harassment and constructively discharged because of my sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended.

Dkt. 50-3, at 2. The charge, which is on a form, indicated that she was discriminated against on the basis of sex (by checking a box) but did not indicate retaliation was a part of the charge (the retaliation box was not checked). *Id.* She received her Notice of Right to Sue on April 17, 2018. Dkt. 50-3, at 3. She filed an updated charge with the EEOC, which asserted the same grounds (Dkt. 50-3, at 5) as the April 13, 2018 charge and received her second Notice of Right to Sue on August 16, 2018 (Dkt. 50-3, at 6).

**B. PROCEDURAL HISTORY**

The Plaintiff asserts claims against Haggen for hostile work environment and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), and the Washington Law Against Discrimination, RCW 49.60, *et. seq*. ("WLAD"). Dkt. 12, at 3-4. She also makes claims wrongful termination and claim suppression under Washington common law. *Id*. The Plaintiff seeks injunctive relief, damages, attorneys' fees, and costs. *Id.*

The trial is set to begin on September 30, 2019. Dkt. 18.

## II. DISCUSSION

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

ORDER ON MOTION FOR SUMMARY JUDGMENT - 7

of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. HOSTILE WORK ENVIRONMENT CLAIM UNDER TITLE VII AND WLAD**

Both Title VII of the Civil Rights Act of 1964 and the WLAD prohibit employer discrimination based on sex or race. 42 U.S.C. § 2000e-2(a)(1); RCW 49.60.180(3). To establish a prima facie hostile work environment claim case under Title VII and the WLAD, a plaintiff must show that, because of their race or sex, they were (1) subjected to unwelcome

conduct (2) "that was sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment" and (3) their employer itself is "liable for the harassment that caused the hostile environment to exist." *Campbell v. Hawaii Dep't. of Educ.*, 892 F.3d 1005, 1007 (9th Cir. 2018)(*internal quotation marks and citations omitted*); *Loeffelholz v. Univ. of Washington*, 175 Wash. 2d 264, 274 n.1 and 275 (2012)(*noting* that Washington courts have traditionally found federal case law persuasive and use the same prima facie case). "The working environment must both subjectively and objectively be perceived as abusive, and the objective analysis is done from the perspective of a reasonable woman." *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017).

The Plaintiff's claim for hostile work environment under federal and state law should be dismissed because she has failed to make an adequate showing as to the second and third element of these claims.

          1. <u>Unwelcome Conduct</u>

For the purposes of this motion, Haggen does not dispute that the Plaintiff was subjected to unwelcome conduct.

          2. <u>Severe or Pervasive Conduct that Alters Conditions of Employment and Causes Hostile Environment</u>

In regard to the second element, all circumstances are considered, "with a particular focus on issues such as the frequency and severity of the conduct, whether the conduct was physically threatening or humiliating, and the extent to which it unreasonably interfered with [the plaintiff's] work performance." *Campbell,* at 1007. "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim under Title VII, but the harassment need not be so severe as to cause diagnosed psychological injury."

*Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 687 (9th Cir. 2017)(*internal quotation marks and citations omitted*).

Even viewing the facts in a light most favorable to the Plaintiff, she has failed to point to sufficient issues of fact that show that Mr. Shaffer's conduct was severe or pervasive enough to alter her conditions of employment from the perspective of a reasonable woman. His conduct was not "physically threatening or humiliating" and she makes no showing that it would unreasonably interfere with a reasonable woman's work performance. The Plaintiff has failed to point to sufficient facts to demonstrate that Mr. Shaffer's conduct, that of staring and following people around the deli was objectively pervasive or severe enough to satisfy this element. Further, even crediting the Plaintiff's testimony, that Mr. Shaffer put his arm around her waist to reach for the temperature log, was an isolated incident which was not "severe or pervasive" enough to cause a hostile environment. *See Reynaga,* at 687. This element is not met.

### 3. Conduct Imputed to the Employer

As to the third element, "[a]n employer may be held liable for creating a hostile work environment either vicariously (i.e., through the acts of a supervisor) or through negligence (i.e., failing to correct or prevent discriminatory conduct by an employee)." *Fuller,* at 1164. In the absence of grounds for imposing vicarious liability, as here, "an employer is liable for a hostile work environment created by a plaintiff's co-worker if the employer knew, or should have known, about the harassment and failed to take prompt and effective remedial action." *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 689 (9th Cir. 2017)(*internal quotation marks and citations omitted*). "Remedial action must include some form of disciplinary measures of which must be proportionate to the seriousness of the offense." *Id.*

The Plaintiff fails to point to sufficient issues of fact to show that Mr. Shaffer's conduct should be imputed to Haggen. The same day she made her supervisors aware of Mr. Shaffer's conduct and asked them to talk to him about it, October 16, 2017, Ms. Hett counseled Mr. Shaffer in keeping with the Plaintiff's request. At that point, the Plaintiff did not tell her supervisors that Mr. Shaffer followed her around or that he touched her (because he had not done that yet). The remedial action of counseling him for the staring was "proportionate to the seriousness of the offense." *Reynaga,* at 689. Further, after she complained to the legal team, Ms. Parkes began the investigation the same day (Friday October 20, 2017), and knew that the Plaintiff and Mr. Shaffer were not scheduled to work together again until Tuesday, October 24th. On Monday, October 23, 2017, after a conversation with Ms. Parkes, Ms. Hett again coached Mr. Shaffer about his conduct and Haggen's policies, even though he had not worked with the Plaintiff since her October 16th complaint. The Plaintiff did not work with Mr. Shaffer as scheduled on October 24, 2017. There is no showing that Haggen's remedial action was not reasonable nor reasonably calculated to stop Mr. Shaffer's conduct. This element is not met.

**C. RETALIATION CLAIM UNDER TITLE VII AND WLAD**

Haggen moves for dismissal of the retaliation claims, arguing that the Plaintiff failed to exhaust her administrative remedies with the EEOC because she did not indicate that she was asserting retaliation claims in her charge. It further moves to dismiss the retaliation claims, arguing that the Plaintiff cannot point to sufficient evidence, if believed, to support the claim.

<u>Failure to Exhaust Retaliation Claims with the EEOC</u>

"As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the [EEOC]." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019)(*citing* § 2000e–5(e)(1), (f)(1)). "Title VII's charge-filing requirement is a processing

rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Id.*, at 1851. "Even when an employee seeks judicial relief for claims not listed in the original EEOC charge, the complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002). "[A] plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *Id*. In determining whether the exhaustion requirement has been satisfied, it is appropriate to focus on the factual allegations and "consider such factors as the alleged basis of the discrimination [or retaliation], dates of discriminatory [or retaliatory] acts specified within the charge, perpetrators of discrimination [or retaliation] named in the charge, and any locations at which discrimination [or retaliation] is alleged to have occurred." *Id*. The language of EEOC charges are construed "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *B.K.B. v. Maui Police Depart.*, 276 F.3d 1091, 1100 (9th Cir. 2002).

Liberally construing the EEOC charges here, a retaliation clam could reasonably be expected to grow out of an EEOC investigation of the Plaintiff's allegations of sex discrimination. The Personnel Action Notices were issued four days after her first report of the harassment at Haggen.

<u>Substantive Retaliation Claims</u>

To make a claim for retaliation under Title VII or the WLAD, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *Milligan v. Thompson*, 110 Wash.App. 628, 42 P.3d 418, 424 (2002). The showing under Title VII and

ORDER ON MOTION FOR SUMMARY JUDGMENT - 12

WLAD are the same except for the third element – causation. For purposes of the causation element, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). "[T]his burden on the plaintiff to establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer is more demanding than the motivating-factor standard." *Stilwell v. City of Williams*, 831 F.3d 1234, 1247 (9th Cir. 2016). For a retaliation claim under the WLAD, "a looser standard" applies to the causation element, which evaluates "whether retaliation was a 'substantial factor' motivating the [adverse employment action]." *Knutson v. Wenatchee Sch. Dist. #246*, 188 Wn. App. 1065 (2015).

If a plaintiff establishes a prima facie case, then the defendant may attempt to rebut the case by presenting evidence of a legitimate non-discriminatory reason for the adverse employment action. *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1464 (9th Cir. 1994); *Estevez v. Faculty Club of Univ. of Washington*, 129 Wash. App. 774*,* 797-798 (2005). If the defendant carries its burden, the burden then shifts back to the plaintiff, who can attempt to prove that the employer's reason is pretextual. *Vasquez v. Co. of Los Angeles,* 349 F.3d 634 (9th Cir. 2003). *Estevez,* at 798. "Once evidence supporting a prima facie case, a non-discriminatory explanation, and pretext has been presented and the record contains reasonable but competing inferences of both discrimination and nondiscrimination, it is the jury's task to choose between such inferences.'" *Estevez,* at 798.

1. <u>Prima Facie Case - Protected Activity</u>

The Plaintiff's October 16, 2017 complaint constitutes a protected activity. Plaintiff met the first element of the prima facie case.

2. <u>Prima Facie Case - Adverse Employment Activity</u>

The Plaintiff has failed to point to issues of fact as to whether Defendant took an adverse employment action against her. After the Plaintiff reported Mr. Shaffer's conduct to Ms. Hett, she received two Personnel Action Notices, or "documented verbal warnings" on October 20, 2017. One was for her failure to turn on the soup pots on October 7 and October 15 and the other was for excessive absenteeism for being absent on July 30, August 12, August 26 (for her eye injury), September 25, and October 8. These notices were verbal warnings. They were not adverse employment actions. There were no changes to the terms or conditions of her employment; "she was not demoted, was not stripped of work responsibilities, was not handed different or more burdensome work responsibilities, was not fired or suspended, was not denied any raises, and was not reduced in salary or in any other benefit." *See Kortan v. California Yourth Authority,* 217 F.3d 1104, 1113 (9th Cir. 2000); and *See Cozzi v. Cty. Of Marin,* 787 F. Supp.2d 1047, 1061 (N.D. Cal. 2011). The Plaintiff has failed to point to evidence that Haggen took an adverse employment action against her. This element is not met, so the Court need not reach the third element, causal link between the protected activity and the adverse action.

### 3. Conclusion on the Prima Facie Case and Burden Shifting

The Plaintiff has failed to point to sufficient evidence on the prima facie case for retaliation under either Title VII or the WLAD. The claims should be dismissed.

Even if she had made a prima facie case, the Defendant asserts that the two Personnel Action Notices were warranted – the Plaintiff did not turn on the soup pots and she acknowledges that she had too many absences. These are "legitimate non-discriminatory" reasons for issuance of the Personnel Action Notices.

The burden then shifts back to the Plaintiff, who can attempt to prove that the employer's reasons is pretextual. *Estevez,* at 798. To show pretext, Plaintiff has to provide some evidence

ORDER ON MOTION FOR SUMMARY JUDGMENT - 14

that the Defendant's reason for issuing the notices is "unworthy of belief." *Brown v. City of Tacoma*, 179 Wash. App. 1028 (2014).

The Plaintiff fails to carry her burden. She points out that the notice regarding the soup pot incidents were issued one to two weeks after they allegedly occurred. Likewise, she notes that the notice regarding her absences related to absences that occurred over a week before the notice was issued; her last absence was October 8 and she did not get the notice until October 20. She has not shown that a reasonable trier of fact could draw the inference that Haggen's reasons for issuing the notices were "unworthy of belief." This claim should be dismissed.

### D. WASHINGTON WRONGFUL DISCHARGE CLAIM

The tort of wrongful discharge in violation of public policy in Washington was adopted as a narrow exception to the at-will employment doctrine. *Martin v. Gonzaga University,* 191 Wash.2d 712, 722-23 (2018). The tort for wrongful discharge has generally been limited to four scenarios as stated in *Dicomes v. State*, 113 Wash.2d 612, 618 (1989). *Id.* Those scenarios are

> (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing.

*Martin*, at 723 (*citing Gardner v. Loomis Armored, Inc.,* 128 Wash.2d 931, 936 (1996); *Dicomes v. State*, 113 Wash.2d 612, 618 (1989)). Only when the facts of a claimed wrongful discharge suit "do not fit neatly into" one of the *Dicomes* categories, do Washington courts look to the Perritt test (as announced in *Gardner*) for guidance. *Karstetter v. King Cty. Corr. Guild*, 95531-0, 2019 WL 3227311, at *6 n.7 (Wash. July 18, 2019). The Perritt test does not apply here. The Plaintiff asserts that she was discharged in violation of public policy because she filed a worker's compensation claim and because she reported Mr. Shaffer's sexually harassing conduct, both of

which were the "exercise[e of] a legal right or privilege." Accordingly, the Plaintiff meets "her burden to allege facts that fall directly within the realm of wrongful discharge, the four-part Perritt framework is unnecessary." *Id.*

To prevail on a wrongful discharge claim, here, the plaintiff "employee must demonstrate that his or her discharge may have been motivated by reasons that contravene a clear mandate of public policy." *Martin,* at 723 (*internal quotation marks and citations omitted*). If the Plaintiff succeeds, "the burden shifts to the employer to prove that the dismissal was for reasons other than those alleged by the employee." *Id.*

The Defendant properly points out that the Plaintiff quit, she was not discharged. "A cause of action for wrongful discharge in violation of public policy may be based on 'either express or constructive' discharge." *Peiffer v. Pro-Cut Concrete Cutting & Breaking Inc.*, 431 P.3d 1018, 1031 (Wash. Ct. App. 2018)(*review denied*, 193 Wn.2d 1006, 438 P.3d 115 (2019)). In reviewing claims for constructive wrongful discharge in violation of public policy, Washington courts separately examine the elements for constructive discharge and then wrongful discharge in violation of public policy. *Id.* If a plaintiff cannot show that she was constructively discharged, their claim for wrongful constructive discharge should be dismissed. *See Peiffer,* at 830 (all four elements of a constructive discharge claim must be met for a claim of wrongful constructive discharge).

"The elements of a claim of constructive discharge are that (1) the employer deliberately made working conditions intolerable, (2) a reasonable person in the employee's position would be forced to resign, (3) the employee resigned because of the intolerable condition and not for any other reason, and (4) the employee suffered damages as a result of being forced to resign." *Peiffer*, at 1031.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 16

The Plaintiff's claim for wrongful discharge should be dismissed. The Plaintiff has failed to point to sufficient evidence that she was constructively discharged. She has not shown that Haggen "deliberately made working conditions intolerable." Further, she makes no showing that "a reasonable person in the employee's position would be forced to resign." "Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). The Plaintiff failed to show that Mr. Shaffer's conduct was "severe or pervasive" enough to support a hostile work environment claim; she fails to demonstrate that the conditions were so intolerable that a reasonable person would quit. Her claim for wrongful discharge in violation of public policy should be dismissed because she has failed to point to issues of fact, which if believed, would support a constructive discharge claim. *See Peiffer,* at 830.

### E. WASHINGTON CLAIM SUPPRESSION CLAIM

The Plaintiff asserts a claim for "claim suppression" based on her receipt of a Personnel Action Notice around the same time she filed a worker's compensation claim in September of 2017. The Defendant moves for summary judgment on this claim.

Under Washington's worker's compensation statute, the Industrial Insurance Act (IIA), provides, in relevant part,

> No employer may discharge or in any manner discriminate against any employee because such employee has filed or communicated to the employer an intent to file a claim for compensation or exercises any rights provided under this title. However, nothing in this section prevents an employer from taking any action against a worker for other reasons including, but not limited to, the worker's failure to observe health or safety standards adopted by the employer, or the frequency or nature of the worker's job-related accidents.

RCW 51.48.025 (1).

The Plaintiff's claim for worker's compensation claim suppression should be dismissed. The statute specifically excludes corrective action (like the Personnel Action Notice) issued by Haggen related to Plaintiff's conduct which resulted in her eye injury from grounds for suit. The Court need not reach the Defendant's remaining arguments as to this claim. The motion for summary judgment should be granted as to the claim for claim suppression.

**F. PUNITIVE DAMAGES CLAIM**

Haggen moves for dismissal of the Plaintiff's claim for punitive damages. The Plaintiff does not address this argument. The motion for summary judgment on the Plaintiff's punitive damages claim should be granted.

Punitive damages are available for violations of Title VII. 42 U.S.C. § 1981a. The relevant provision of Title VII provides,

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a (b)(1).

To the extent it is based on her federal Title VII claims, the Plaintiff's claim for punitive damages should be dismissed. She has failed to point to evidence that Haggen "engaged in a discriminatory practice . . . with malice or with reckless indifference" to her federally protected rights.

Further, to the extent her punitive damages claim is based on Washington law, it should be dismissed. Under Washington law, punitive damages are not available unless authorized by

statute. *Dailey v. N. Coast Life Ins. Co.,* 129 Wash.2d 572, 575 (1996). The WLAD does not authorize punitive damages. *Id.* The claim should be dismissed.

### III. ORDER

It is **ORDERED** that:

- The Defendant's Motion for Summary Judgment (Dkt. 49) **IS GRANTED;** and
- This case **IS DISMISSED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 1st day of August, 2019.

*Robert J. Bryan* (signature)

ROBERT J. BRYAN
United States District Judge